# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GRANVILLE MORRIS;
GLORIA ADAMS;
JACK BARTELME, III;
WALTER BAXTER;
JOHN BOEHM;
DANIEL BRADY;
GINA BROWN;
ROBERT CHASTAIN;
ADAM COMBS;
RONDA COMSTOCK;
BYRON COVER;
CELESTE CRUM;
FLORA DAVIS;
MARVIN DEVAN JR;
KATHRYN DIDIER;
CHARLENE DOTSON ORANGE;
JULIA DOUGLAS;
SHARLENE DUNN;
CHRISTINE EAKIN;
GERALD ETTINGER;
CHARLES FORSYTH;
SANG FOX;
HEATHER FRAZIER;
JOHN GARCIA;
FRANCISCO GONZALEZ;
BERNARD HARDWICK;
CLIFFORD HENDRICKS;
SCOTT HOGGE;
RENE HOSEY;
MICHAEL HOWE;
AMANDA IRVIN;
NINA JEFFERSON;
CHARLES JENKINS;
GREGORY JOHNSON;
LOURDES JOHNSON, as the Proposed Administrator of
The ESTATE OF RONALD JOHNSON;
KARLY KENTFIELD;
STEPHEN KLINE;
RYAN KOTT;
KELLIE KUNTZ;
LAWRANCE LIVINGSTON;
ROBERT MCGLONE;
CHRISTOPHER MILAM;
DORKA MORALES;
MARI MUROZ;

C.A. No.


JURY TRIAL DEMANDED

JACKIE NELSON;
WILLIAM NELSON;
COLETTE QUILLEN;
PRISCILLA QUINLAN;
JOHN RIESENBERG;
DAVID ROBERTS;
RONNEY ROGERS;
ROBERT ROMEO;
BRIAN SCHWAB;
JANICE SCOTT;
PETER SHARP;
JESSICA SILKS;
SANDRA SISK, as the Proposed Administrator of The
ESTATE OF DOUGLAS SISK;
CHARLES SKINNER;
DENNIS SMAZAL;
DAVID SMITH, as the Parent and Natural Guardian Of
A.S.;
HOLLY SOCCIARELLI;
COLLIN STEWART;
MARK STOKESBERRY;
CHRISTY THATCHER;
DANA TURNER;
SHERRI TURNER;
DAWN VANDYKE;
DEAN WHITCOMB;
BRENDA WHITE;
MARION WHITE;
BRENDA WILLIAMS;
GWENDOLYN WINDOM;
KIMBERLY WOODS;
TIMOTHY WOODSON;
KRYSTAL WORTHINGTON;
HEAVEN WORTHMAN;
CONNIE WRIGHT;
AUBREY SILVERS; and
J.W. FRAZIER,

                       Plaintiffs,

     v.

3M COMPANY, f/k/a Minnesota Mining and
Manufacturing Co.;
EIDP, INC., f/k/a E. I. du Pont de Nemours
and Company;
THE CHEMOURS COMPANY;

RLF1 32414259v.1

THE CHEMOURS COMPANY FC, LLC;
CORTEVA, INC.;
DUPONT DE NEMOURS, INC., f/k/a
DowDuPont, Inc.;
HONEYWELL INTERNATIONAL, INC.,
f/k/a Allied Signal Inc.;
W. L. GORE & ASSOCIATES, INC.;
AGC CHEMICALS AMERICAS, INC.;
ARCHROMA U.S., INC.;
ARKEMA INC.;
BASF CORPORATION;
CLARIANT CORPORATION;
DAIKIN AMERICA, INC.; and
SOLVAY SPECIALTY POLYMERS USA,
L.L.C.,

Defendants.

## NOTICE OF REMOVAL

Defendant 3M Company ("3M"), by undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of Delaware to the United States District Court for the District of Delaware. As grounds for removal, 3M alleges as follows.

## PRELIMINARY STATEMENT

1. Plaintiffs seek to hold 3M and other Defendants liable based on their alleged conduct in designing, manufacturing, or selling per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and PFAS-containing products. Plaintiffs further allege that Defendants' PFAS and/or PFAS-containing products contaminated Plaintiffs' current and/or former drinking water supplies and properties in Delaware, and that Plaintiffs' exposure to such PFAS caused their claimed medical conditions.

2. At least some of the PFAS that plausibly gives rise to Plaintiffs' claims was released by the use, storage, or disposal of PFAS-containing aqueous film-forming foam ("AFFF") that was manufactured for and sold to the U.S. military and other users by a select group of suppliers

(including 3M) in accordance with the military's rigorous specifications ("MilSpec"). Over time, 3M's MilSpec AFFF products have been used by the military (among other users) across the United States. The alleged PFAS contamination of at least some Plaintiffs' drinking water and properties plausibly resulted in part from use of MilSpec AFFF at military facilities and elsewhere.

3. Under the federal government contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), 3M is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008); *see also Albritton v. A Clemente, Inc.*, 2023 WL 2447422, at *3-8 (D.N.J. Mar. 10, 2023) (holding that defendant properly removed PFAS case based on federal officer jurisdiction because products at issue were made for the federal government); *N.J. Dep't of Env't Prot. v. E.I. Du Pont de Nemours & Co.*, 2020 WL 2611539, at *2-7 (D.N.J. May 22, 2020).

4. Although Plaintiffs' Complaint purports to disclaim any damages arising from contamination or injury related to MilSpec products and/or products sold to the federal government, Plaintiffs' requests for relief encompass damages attributable to PFAS-containing MilSpec AFFF. At least for certain Plaintiffs, PFAS from MilSpec AFFF plausibly commingled with other alleged PFAS contamination that purportedly caused their claimed injuries. Moreover, PFAS from MilSpec AFFF is identical to PFAS from other sources, and Plaintiffs do not explain how to segregate out the PFAS-related claims covered by its disclaimer. Plaintiffs cannot prevent

3M "from raising the production of MilSpec AFFF as a defense or an alternate theory" of the claimed damages. *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021). As a result, 3M is entitled to a federal forum to litigate its federal defense.

## BACKGROUND

5.     This action was filed on January 2, 2025, in the Superior Court of Delaware, bearing Case No. N25C-01-083 FWW. *See* Complaint (attached as Exhibit A).  The full record in the Superior Court is attached as Exhibit B.

6.     Plaintiffs are 78 individuals who allege that they each reside at various locations across the United States including in Alaska, Connecticut, Delaware, Idaho, Indiana, Iowa, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Mexico, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Puerto Rico. Complaint ¶¶ 16-94.

7.     Plaintiffs generally allege that Defendants, including 3M, have designed, manufactured, sold, and/or released PFAS and PFAS-containing products, including PFOS, PFOA, and products containing them. *See, e.g.*, Compl. ¶¶ 4-5, 95-147, 244-245.

8.     Plaintiffs allege that PFAS releases contaminated their drinking water supplies and properties, and that their consumption of allegedly PFAS-contaminated drinking water and/or other exposure to PFAS purportedly resulted in their claimed medical conditions which include kidney cancer, liver cancer, testicular cancer, thyroid disease and/or ulcerative colitis. *Id.* ¶¶ 7-11, 16-94.

9.     Plaintiffs assert damages claims against all Defendants for defective design (*id.* ¶¶ 289-298), failure to warn (*id.* ¶¶ 299-305), negligence (*id.* ¶¶ 306-316), private nuisance (*id.* ¶¶ 317-326), trespass (*id.* ¶¶ 327-332), strict product liability (*id.* ¶¶ 333-338), market share

liability, alternative liability, concert of action, and enterprise liability (*id.* ¶¶ 339-342), and conspiracy (*id.* ¶¶ 343-346).[1] But Plaintiffs allege that they "do not in this Complaint assert claims regarding any PFAS containing products produced by defendants for sale to the United States Government, and/or produced in compliance with technical standards set by the United States Government such as Military Specifications." *Id.* ¶ 2.

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. §§ 1442(a)(1) AND 1446 ARE MET

10.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 87 and 1442(a) because the Superior Court of Delaware is located within the District of Delaware.

11.    3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 195 (D. Mass. 2008).

12.    Plaintiffs have not served 3M as of this date. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

13.    Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the Superior Court of Delaware.

14.    By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

---

[1] Plaintiffs additionally assert claims against only certain Defendants other than 3M for violation of the Uniform Fraudulent Conveyance Act. Complaint ¶¶ 347-357.

RLF1 32414259v.1

15.    3M reserves the right to amend or supplement this Notice of Removal.

16.    If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

17.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) the plaintiff's claims are based on the defendant's conduct "acting under" the United States, its agencies, or officers; (c) the plaintiff's claims are "for or relating to" the defendant's acts under color of federal office; and (d) the defendant raises a colorable federal defense. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 133-35 (1989); *Papp*, 842 F.3d at 812; *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *see also* 28 U.S.C. § 1442(a)(1) (providing for removal of cases against United States officers that are "for or relating to any act under color of such office").

18.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441(a). Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)."

RLF1 32414259v.1

*Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

19.    All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel*, 2021 WL 744683, at *3 (denying motion to remand in PFAS case against AFFF manufacturers because, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF, . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against manufacturers of MilSpec AFFF). The court overseeing the AFFF MDL has found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that plaintiff's injuries are caused, at least in part, by MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.* ("*AFFF I*"), No. 2:18-mn-2873, 2019 WL 2807266, at *2-3 (D.S.C. May 24, 2019); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("*AFFF III*"), at 3-6. The MDL Court's holdings demonstrate that this case, too, is properly removed to federal court.[2]

20.    Here, even though Plaintiffs purport to disclaim damages related to MilSpec products sold to the federal government such as MilSpec AFFF, the claimed injuries from "commercial" PFAS sources plausibly resulted in part from PFAS deriving from MilSpec AFFF that has migrated to Plaintiffs' drinking water supplies and properties where it has commingled with PFAS from other sources. As a result, some Plaintiffs' claims for PFAS-related damages

---

[2] Following removal, 3M intends to designate this action for transfer to the MDL.

relate to a single injury attributable at least in part to MilSpec AFFF. To the extent that Plaintiffs' claimed injuries from "commercial" sources cannot actually be separated out from injuries deriving from MilSpec AFFF, Plaintiffs necessarily are seeking to impose liability on 3M for alleged contamination attributable in part to MilSpec AFFF, despite the alleged disclaimer. Moreover, 3M is entitled to a federal forum to litigate any apportionment of Plaintiffs' damages between PFAS from "commercial" sources and PFAS from MilSpec AFFF sources, as the Seventh Circuit recently held in another case for alleged PFAS contamination in which the plaintiff similarly purported to disclaim injury from AFFF. *See People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024) (holding that "a federal court should be the one to resolve" difficult questions of apportionment of PFAS-related injuries between "commercial" sources and MilSpec AFFF sources subject to a federal defense, and ordering remand *only* because the plaintiff conceded that pursuant to its alleged disclaimer, it would not seek recovery for "mixed PFAS contamination" so its "recovery is barred" "[i]f even a morsel of contamination" is from AFFF). Accordingly, this case has been properly removed to this Court based on federal officer jurisdiction.

A.     **MilSpec AFFF**

21.     Since the late 1960s/early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. In fact, the United States Naval Research Laboratory developed AFFF—its researchers were granted the first AFFF

patent in 1966.[3] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

22.     The design and manufacture of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, part of the Department of Defense ("DoD"). The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5] All MilSpec AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[6] Prior to such listing, a "manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[7] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.[8] After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[9] Naval Sea Systems Command "reserves the right to perform any of the

---

[3] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[4] U.S. Navy, NRL/MR/1001-06-8951, U.S. Naval Research Lab., *The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power*, at 37 (June 30, 2006) ("*Fulfilling the Roosevelts' Vision*"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[5] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[6] MIL-PRF-24385F(4) § 3.1 (2020).

[7] DoD SD-6, Provisions Governing Qualification at 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[8] *See, e.g.*, MIL-PRF-24385F(4) at 18 (2020). The cited MilSpec designates Naval Sea Systems Command as the "Preparing Activity." The "Preparing Activity" is responsible for qualification. (*See* DoD SD-6, *supra* n.7, at 3.)

[9] DoD SD-6, *supra* n.7, at 1.

[quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[10]

23.    From its inception until 2019, the MilSpec for AFFF included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their precursors—among the compounds expressly alleged to be at issue in the Complaint here.[11] The current MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[12] Indeed, the current MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."[13]

24.    3M manufactured and sold PFAS-containing MilSpec AFFF to the U.S. military for over three decades pursuant to contracts with the United States. One or more of 3M's AFFF products were on the Navy's Qualified Products List for MilSpec AFFF from 1970 until 2010

---

[10] *See, e.g.*, MIL-PRF-24385F(4) § 4.1 (2020).

[11] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

[12] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

[13] MIL-PRF-24385F(4) § 6.6.

(even though 3M had phased out production of AFFF beginning in 2000).[14] Over time, the U.S. military used MilSpec AFFF manufactured by 3M throughout the United States.[15]

25.    Thousands of other lawsuits, including lawsuits filed by thirty-five Sovereign States and Territories, have proceeded and/or are proceeding in the AFFF MDL where plaintiffs seek to hold 3M and other Defendants liable for PFAS contamination based on express allegations that use of AFFF—including at certain military facilities (among other locations)—purported has resulted in contamination of groundwater and surface water with PFOS, PFOA, and/or other PFAS chemicals that have impacted drinking water supplies. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018) (establishing MDL for cases in which "plaintiffs allege that AFFF products used at . . . military bases," *inter alia*, "caused the release of PFOA or PFOS into local groundwater and contaminated drinking water supplies").

26.    For at least some Plaintiffs here, MilSpec AFFF at military facilities and elsewhere plausibly contributed to the alleged PFAS contamination of drinking water and properties that purportedly resulted in the claimed injuries. Plaintiffs' claims thus relate to or arise in part from PFAS-containing MilSpec AFFF.

---

[14] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014) & MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

[15] 3M also historically manufactured and sold PFAS-containing MilSpec AFFF to non-military users, including in South Carolina. As one notable example, so-called "Part 139" airports—*i.e.*, certain large civilian airports (*see* 14 C.F.R. § 139.1 (2019))—historically have used MilSpec AFFF, including 3M's MilSpec AFFF products. In fact, by 2006, the U.S. government was requiring Part 139 airports to use AFFF meeting MilSpec standards. *See* FAA Part 139 CertAlert 06-02, Aqueous Film Forming Foam (AFFF) meeting MIL-F-24385 (Feb. 8, 2006) (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-14 (D.S.C.)).

27.     In fact, certain Plaintiffs allegedly reside and/or have resided at locations within the service area of a water provider that has filed a lawsuit in the AFFF MDL *expressly* alleging that military uses of AFFF contributed to the PFAS levels in its drinking water:

- The Complaint alleges that Plaintiff Daniel Brady lives in Philadelphia, Pennsylvania. *See* Complaint ¶ 21. The City of Philadelphia provides drinking water to its residents, and has filed a lawsuit pending in the AFFF MDL expressly alleging that use of AFFF at military installations in or around Philadelphia has contributed at least in part to claimed PFAS contamination of its drinking water supply. *See* Am. Compl. ¶¶ 118-120, *City of Philadelphia v. 3M Co., et al.*, No. 2:23-cv-01614 (D.S.C.), ECF No. 44; *see also id.* ¶¶ 10, 26.

- The Complaint alleges that Plaintiff Byron Cover lives in Essex, Maryland. *See* Complaint ¶ 26. Drinking water in Essex, Maryland, is provided by the City of Baltimore, which has filed a lawsuit pending in the AFFF MDL expressly alleging that use of AFFF at one or more military installations—specifically including the Aberdeen Proving Ground, Banbridge Naval Training Center Port Deposit, and George G. Meade Army Base—contributed at least in part to claimed PFAS contamination of its drinking water supply. *See* Am. Compl. ¶ 144, *Mayor & City Council of Baltimore v. 3M Co., et al.*, No. 2:22-cv-04312 (D.S.C.), ECF No. 11.

- The Complaint alleges that Plaintiff Priscilla Quinlan lives in Stafford, Virginia. *See* Complaint ¶ 63. Drinking water in Stafford, Virginia, is provided by Stafford County, which has filed a lawsuit pending in the AFFF MDL expressly alleging that use of AFFF at one or more military installations—specifically including the Marine Corps Base Quantico—contributed at least in part to claimed PFAS

13

contamination of its drinking water supply. *See* Compl. ¶ 14, *Bd. of Supervisors of Stafford Cnty. v. 3M Co., et al.*, No. 2:23-cv-02191 (D.S.C.), ECF No. 1.

- The Complaint alleges that Plaintiff Brian Schwab lives in Germantown, Maryland. *See* Complaint ¶ 68. Drinking water in Germantown, Maryland is provided by the Washington Suburban Sanitary Commission, which has filed a lawsuit pending in the AFFF MDL expressly alleging that use of AFFF at military installations—specifically including Joint Base Andrews and the U.S. Naval Surface Warfare Center and Nike Missile Site—contributed at least in part to claimed PFAS contamination of its drinking water supply. *See* Compl. ¶¶ 175, 190, *Wash. Suburban Sanitary Comm'n v. 3M Co., et al.*, No. 8:23-cv-02108 (D.S.C.), ECF No. 1.[16]

---

[16] While those lawsuits may be the most explicit in attributing PFAS-related damages to AFFF use at military facilities in particular, they are not the only relevant lawsuits pending in the AFFF MDL. Other Plaintiffs in this case (including some discussed in paragraph 28, *infra*) have resided at locations in service areas for other water providers that have filed suit against 3M and other Defendants in the MDL based on allegations that their water supplies contain PFAS deriving from AFFF. Thus, the Complaint here alleges that certain Plaintiffs herein resided in Des Moines, Iowa; Fort Thomas, Kentucky; Louisville, Kentucky; Thibodaux, Louisiana; Boonsboro, Maryland; West Warwick, Rhode Island; North Charleston, South Carolina; Spokane, Washington; and Tacoma, Washington. *See* Complaint ¶¶ 27, 29, 32, 33, 38, 41, 42, 75, 78, 80, 88. The water providers for those locations all have filed cases pending in the AFFF MDL to recover for AFFF contamination of their drinking supplies: the cases are: *Bd. of Water Works Trustees of the City of Des Moines, Iowa*, No. 2:22-cv-03837 (D.S.C.); *N. Ky. Water Dist.*, No. 2:23-cv-02333 (D.S.C.); *Louisville Water Co. v. 3M Co., et al.*, No. 2:23-cv-02367 (D.S.C.); *City of Thibodaux, La. v. 3M Co. et al.*, No. 2:24-cv-02335 (D.S.C.); *Town of Boonsboro, Md. v. 3M Co., et al.*, No. 2:23-cv-02615 (D.S.C.); *Kent Cnty. Water Auth. v. 3M Co., et al.*, No. 2:23-cv-03855 (D.S.C.); *Comm'rs of Public Works for the City of Charleston v. 3M Co., et al.*, No. 2:23-cv-01075 (D.S.C.); *City of Spokane, Wash. v. 3M Co., et al.*, No. 2:24-cv-01917 (D.S.C.); *City of Tacoma v. 3M Co. et al.*, No. 2:21-cv-00351 (D.S.C.).

28.    In addition, many other Plaintiffs allegedly have resided at locations for which the alleged PFAS contamination of the drinking water supply plausibly resulted, at least in part, from MilSpec AFFF use at nearby military facilities. Those include, but are not limited to, the following:

- The Complaint alleges that Plaintiff Clifford Hendricks lives in North Charleston, South Carolina. *See* Complaint ¶ 78. Any PFAS in the Charleston Water System's drinking water supplies plausibly derived at least in part from use of MilSpec AFFF at multiple military installations in the vicinity of Charleston, South Carolina, including Fort Jackson, Shaw Air Force Base, McEntire Air National Guard Base, and the McCrady Training Center. PFAS investigations for each of those facilities have described areas where AFFF historically was used and have identified pathways whereby PFAS from AFFF discharges would have migrated off-site to surrounding groundwater and/or surface water, plausibly impacting Charleston's water. *See* Arcadis U.S. Inc., *Final Preliminary Assessment and Site Inspection of Per- and Polyfluoroalkyl Substances, Fort Jackson, South Carolina* (Mar. 2022), *available at* https://aec.army.mil/Portals/115/PFAS/Jackson_PASI_202203.pdf; AECOM, *FINAL PFAS Expanded Site Inspection Report, Shaw Air Force Base, SC* (October 2021), *available at* https://ar.cce.af.mil/ (AR#4118a); Leidos, *Final Site Inspection Report for Perfluorooctane Sulfonate and Perfluorooctanoic Acid at McEntire Joint National Guard Base* (April 2019), *available at* https://ar.afcec-cloud.af.mil/ (AR#586433); AECOM, *Final Site Inspection Report McCrady Training Center* (Aug. 2023), *available at* https://www.nationalguard.mil/Leadership/Joint-Staff/Personal-Staff/Public-Affairs/Community-Engagement/Environmental/PFAS-Library/South-Carolina/FileId/341922/.

- The Complaint alleges that Plaintiff Sherri Turner lives in Anchorage, Alaska. Complaint ¶ 81. MilSpec AFFF was used at a number of military installations in and around Anchorage, Alaska—including Fort Richardson and the Elmendorf Air Force Base—which plausibly has impacted groundwater and surface water from which Anchorage draws its drinking water supply. *See, e.g.*, CH2M Hill, *Final Preliminary Assessment Report for Perfluorinated Compounds at Joint Base Elmendorf-Richardson, Alaska* (Apr. 2015), *available at* https://ar.cce.af.mil/ Search (AR#585158) (identifying high probability of groundwater contamination from AFFF use).

- The Complaint alleges that Plaintiff Lourdes Johnson lives in Las Cruces, New Mexico. Complaint ¶ 50. The drinking water supply there plausibly was impacted by AFFF use at nearby White Sands Missile Range, where PFAS attributable to AFFF has been detected in the groundwater and soil. *See* Arcadis U.S., *Final Preliminary Assessment and Site Inspection of Per- and Polyfluoroalkyl Substances, White Sands Missile Range, New Mexico* (July 2023), *available at* https://aec.army.mil/Portals/115/PFAS/WSMR_PFAS_PASI_P1.pdf.

- The Complaint alleges that Plaintiffs Sharlene Dunn and Bernard Hardwick live in Spokane, Washington. Complaint ¶¶ 33, 41. Any PFAS in drinking water supplies for Spokane, Washington plausibly derived at least in part from use of MilSpec AFFF at Fairchild Air Force Base in Spokane, Washington. Elevated PFAS levels attributable to AFFF use at Fairchild Air Force Base have been detected in groundwater where it plausibly impacted the City of Spokane's drinking water supply. *See, e.g.*, *Relative Risk Site Evaluation, Fairchild Air Force Base, Spokane*

16

*County, Washington* (Sept. 21, 2022), *available at* https://ar.cce.af.mil/Search (AR#2374). The State of Washington's own AFFF lawsuit expressly alleges that AFFF use at Fairchild Air Force Base has contaminated drinking water supplies. Am. Compl. ¶¶ 4.7, 4.26-4.31, *Washington v. 3M Co., et al.*, No. 2:23-cv-03262 (D.S.C.), ECF No. 43.

29.     For the foregoing reasons, the alleged PFAS-related injuries at issue in this action are, at least in part, plausibly attributable and/or related to PFAS deriving from MilSpec AFFF use at military facilities and elsewhere that inseparably commingled with the alleged PFAS from "commercial" sources. As a result, 3M is entitled to remove this case as a whole pursuant to federal officer jurisdiction. That is because Plaintiffs' claims for alleged PFAS-related injuries necessarily relate to PFAS deriving at least in part from MilSpec AFFF sources, *i.e.*, "[i]t is entirely possible that Plaintiff['s] injuries occurred from actions taken while Defendants were acting under color of federal office: namely, MilSpec AFFF." *Nessel*, 2021 WL 744683, at *3. 3M therefore is entitled to raise "the production of MilSpec AFFF as a defense or alternative theory," and on that basis, may remove this case. *Id.* Although the Complaint purports to allege that Plaintiffs are not seeking any PFAS-related relief related to MilSpec products such as AFFF (*see* Complaint ¶ 2), Plaintiffs' claims nonetheless relate to alleged PFAS-related injuries and/or contamination that, at least in part, plausibly would have been caused by or related to MilSpec AFFF (and not just "commercial" PFAS sources). Plaintiffs' disclaimer thus does not preclude removal of this case. *See Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 180 (1st Cir. 2024) (holding that defendant properly removed case under the federal officer removal statute, notwithstanding the plaintiff's alleged disclaimer of relief related to federal conduct, because "[t]o credit the disclaimer would permit [plaintiff] to recover based on what, when considered through [defendant's] theory of removal,

were acts under a federal officer," and plaintiff's "attempts at artful pleading cannot serve as an end run around the federal officer removal statute"). Federal officer removal is proper despite the alleged disclaimer because the claimed injuries from PFAS are plausibly due in part to PFAS from MilSpec AFFF—and at a minimum, 3M is entitled to litigate in federal court any apportionment of Plaintiffs' injuries between PFAS from MilSpec AFFF sources and PFAS from other sources. *See Raoul*, 111 F.4th at 849 ("If the contamination came from AFFF, then the government contractor defense could apply . . . even though the State's complaint expressly excluded 3M from liability for PFAS contamination sources from AFFF" because "a factfinder would need to apportion the contamination" between AFFF and non-AFFF PFAS sources); *Nessel*, 2021 WL 744683, at \*3 (denying State of Michigan's motion to remand and concluding that federal officer removal was proper notwithstanding the complaint's allegation that Michigan was not seeking relief for MilSpec AFFF; "Plaintiffs' artful pleading does not obviate the facts on the ground.").

**B.**     **All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.**

### 1.    *The "Person" Requirement Is Satisfied.*

30.     The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) meets the definition of "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135-36.

### 2.    *The "Acting Under" Requirement Is Satisfied.*

31.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson*, 517 F.3d at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer

or agency." *Papp*, 842 F.3d at 813. "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017); *accord N.J. Dep't of Env't Prot.*, 2020 WL 2611539, at *3 ("Where [the] 'federal government uses a private corporation to achieve an end it would otherwise use its own ends to complete,' the corporation is deemed to be acting under the authority of the federal officer" (quoting *Papp*, 842 F.3d at 812)); *Albritton*, 2023 WL 2447422, at *4.

32.     The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination that is the focus of Plaintiffs' claims stems in part from MilSpec AFFF, a vital product provided by 3M that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)). The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[17] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF. If 3M and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

33.     In designing and manufacturing the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with

---

[17] Fulfilling the Roosevelts' Vision, *supra* n.4, at 37.

detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the U.S. Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[18] 3M has satisfied the "acting under" requirement. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (same); *AFFF I*, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); *AFFF II*, at 3-5 (holding likewise in case involving MilSpec AFFF used at Part 139 airport); *AFFF III*, at 3-6 (same).

### 3.   *The "Under Color Of Federal Office" Requirement Is Satisfied.*

34.    The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between plaintiff's claims and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Sawyer*, 860 F.3d at 258 (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office"); *Papp*, 842 F.3d at 813; *Isaacson*, 517 F.3d at 137-38 (explaining that it is sufficient if the act that allegedly caused or contributed to the plaintiff's injuries occurred while the defendant was performing its official duties); *see also Albritton*, 2023 WL 2447422, at *5 ("Congress revised the Officer Removal Statute in 2011 to 'broaden the universe of acts that enable Federal officers to remove [suits] to Federal Court,'" and accordingly

---

[18] *See* DoD SD-6, *supra* n.7, at 1.

it is "'sufficient for there to be a "connection" or "association" between the act in question and the federal office'" (quoting *Papp*, 842 F.3d at 813).[19]

35.    Here, Plaintiffs' claims against 3M arise at least in part from alleged PFAS contamination attributable to MilSpec AFFF. The military specifications have expressly or implicitly required the use of PFAS in the product. As a result, Plaintiffs' claims against 3M are connected to its acts taken under color of federal office. *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); *AFFF I*, 2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products . . . for which the U.S. military imposes MilSpec standards."); *AFFF II*, at 5 (element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); *AFFF III*, at 5-6 (same).

36.    It is irrelevant that Plaintiffs do not expressly contend that they have been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 192 (1st Cir. 2024); *Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present"); *Albritton*, 2023 WL 2447422, at *7 (defendant's alleged conduct was for or relating to act under color of federal office because defendant was "entitled to put forward an alternate theory of causation" related to products manufactured for the federal government). As averred in this Notice of Removal, Plaintiffs' alleged injuries arise at least in part from alleged exposure to MilSpec AFFF. Plaintiffs' claims therefore are "for or relating to"

---

[19] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

3M's actions under color of federal office (28 U.S.C. § 1442(a)(1)), and 3M therefore was entitled to remove this case as a whole pursuant to § 1442(a)(1). *See, e.g.*, *Bennett v. MIS Corp.*, 607 F.3d 1076, 1084 n.6 (6th Cir. 2010) ("[S]ection 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency.").

### 4. The "Colorable Federal Defense" Requirement Is Satisfied.

37.     The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

38.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted); *see also Albritton*, 2023 WL 2447422, at *7-8 (defendant had "raised a colorable government contractor defense" because defendant "pointed to government contracts and specifications for chemicals alleged" in the complaint). "A defendant 'need not win his case before he can have it removed.'" *Papp*, 842 F.3d at 815 (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin*

22

*Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

39.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. 3M has satisfied these elements for purposes of removal.

40.     The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.[20] Those specifications are "reasonably precise," including in requiring the use of PFAS.[21] In addition, in the past and

---

[20] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

[21] As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.

continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

41.    With respect to the second requirement, 3M's products have appeared on the DoD Qualified Products List,[22] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *AFFF I*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

42.    Regarding the third requirement, the U.S. government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[23] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and

---

[22] *See* QPL/QPD Histories, *supra* n.14.

[23] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002).

the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[24] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[25] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."[26] In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.[27] More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[28] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants,"[29] and recognizes that PFAS, including PFOS and PFOA, will be present

---

[24] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[25] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[26] EPA Presentation on Activities/Issues on Fluorosurfactants, March 16, 2001 (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.), ECF No. 1971-2).

[27] *See* EPA, Revised Draft Hazard Assessment, *supra* n.23.

[28] DoD, *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[29] MIL-PRF-24385F(4) § 3.2 (2020).

(subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[30] *See Ayo*, 2018 WL 4781145, at \*12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); *AFFF I*, 2019 WL 2807266, at \*3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

43.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at \*5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at \*13.

44.    3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries to Plaintiffs that were caused in whole or in part by 3M's compliance with military specifications, Plaintiffs are attempting to use state

---

[30] MIL-PRF-24385F(4) § 6.6 & Tables I, III; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

45.    In the AFFF MDL, the MDL court has found based on an extensive factual record that the government contractor defense asserted by 3M and other MilSpec AFFF manufacturers presents genuine issues of fact for trial. *See In re AFFF Prods. Liab. Litig.*, 2:18-mn-02873, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, 3M hereby removes this action from the Superior Court of Delaware to this Court.

Respectfully submitted,

Dated: February 14, 2025

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Richards, Layton & Finger, PA
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendant 3M Company*

27

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 14, 2025, I caused a true and correct copy of the foregoing

to be served on the following parties by First Class Mail and/or Email as indicated below:

<u>By Mail and Email:</u>

Thomas C. Crumplar
**JACOBS & CRUMPLAR, P.A.**
10 Corporate Circle
Suite 301
New Castle DE 19720-2418
Tel. (302) 656-5445
tom@jcdelaw.com

Nicholas Mindicino, Esq.
**NAPOLI SHKOLNIK PLLC**
360 Lexington Avenue
11th Floor
New York, NY 10017
NMindicino@NapoliLaw.com

*Attorneys for Plaintiffs*

<u>By Mail:</u>

EIDP, INC.
f/k/a E.I. du Pont de Nemours and Company
974 Centre Road, Wilmington, Delaware 19805

THE CHEMOURS COMPANY
1007 Market Street
Wilmington, Delaware 19899

THE CHEMOURS COMPANY FC, LLC
1007 Market Street
Wilmington, Delaware 19899

CORTEVA, INC.
974 Centre Road, Wilmington,
Delaware 19805

1

DUPONT DE NEMOURS INC.
f/k/a DowDuPont, Inc.
974 Centre Road
Wilmington, Delaware 19805

HONEYWELL INTERNATIONAL, INC.
f/k/a Allied Signal Inc.
855 S. Mint St.
Charlotte, North Carolina 28202

W. L. GORE ASSOCIATES, INC.
555 Paper Mill Road
Newark, Delaware 19711

AGC CHEMICALS AMERICAS, INC.
55 East Uwchlan Avenue, Suite 201
Exton, Pennsylvania 19341

ARCHROMA U.S., INC.
5435 77 Center Drive,
Charlotte, North Carolina 28217

ARKEMA INC.
900 First Avenue
King of Prussia, Pennsylvania 19406

BASF CORPORATION
100 Park Avenue,
Florham Park, New Jersey 07932

CLARIANT CORPORATION
4000 Monroe Road,
Charlotte, North Carolina 28205

DAIKIN AMERICA INC.
20 Olympic Dr, Orangeburg,
New York 10962

SOLVAY SPECIALTY POLYMERS USA, LLC
4500 McGinnis Ferry Rd.
Alpharetta, Georgia 30005

*Defendants*

Dated: February 14, 2025                    */s/ Kelly E. Farnan*
                                            Kelly E. Farnan

2